IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE                                              : CHAPTER 13
                                                   :
WILLIAM C. SMITH,                                  :
                                                   :
                        DEBTOR.                    : BANKRUPTCY NO. 11-10253 SR

# OPINION

By:  STEPHEN RASLAVICH, UNITED STATES CHIEF BANKRUPTCY JUDGE.

**INTRODUCTION**

Before the Court is the motion ("Motion") of Toyota Motor Credit Corporation ("TMCC") and Toyota Lease Trust (sometimes referred to as "TLT") for termination of the automatic stay pursuant to 11 U.S.C. § 362(d) and for an order requiring the assumption or rejection of executory contracts or unexpired leases in accordance with 11 U.S.C. § 365(d). The lease at issue is a Closed End Motor Vehicle Lease Agreement ("Lease") for a 2007 Toyota Sequoia ("Vehicle"). The lessor on the Lease is Faulkner Toyota.

The debtor, William C. Smith ("Debtor"), filed an answer ("Answer") opposing the Motion. While the Answer primarily consists of one word answers (either "admitted" or "denied"), it specifically denies that there was an assignment of the Lease from Faulkner Toyota to Toyota Lease Trust or TMCC (collectively "Movants') based on the ground that the Movants did not attach a copy of the assignment to the Motion. This issue is resolved by reviewing the Lease itself which was attached to, and incorporated in the Motion, as Exhibit "A." The Lease specifically states that the lessor will assign the Lease to Toyota Lease Trust and that, on its behalf, TMCC will be servicing the Lease.

The other issue raised by the Motion and the Answer and debated at the hearing on the Motion is primarily a legal one. The issue is whether the Debtor can assume the Lease and then treat it in his Chapter 13 Plan ("Plan") by paying the purchase price of the Vehicle through payments made to the Trustee over the life of the five year Plan. The Movants contend that the Plan is improper because of its treatment of the Lease; the Debtor takes the opposite position but fails to provide any legal authority to support it.

Following a hearing on the Motion, the matter was taken under advisement. Upon consideration, the Motion shall be granted in part. The Debtor shall be ordered to amend his Plan to assume or reject the Lease in accordance with 11 U.S.C. §§ 365 & 1322(b)(7) and the legal conclusions set forth herein. With respect to other relief requested in the Motion (*i.e.*, for relief from the automatic stay and/or for the Debtor to be ordered to surrender the Vehicle), the Motion shall be continued to a future hearing date.

**BACKGROUND**

*Lease Term and Options to Purchase*

On or about January 13, 2007, the Debtor executed and delivered the Lease for the Vehicle. The terms of the Lease require the Debtor to make sixty (60) monthly payments on the 13th day of each month in the amount of $763.17 for a total of $45,790.20. *See Lease.* With the term of the Lease being 60 months, the Scheduled Maturity Date of the Lease is January 12, 2012. *Id. at ¶ 14.* The Lease provides that Debtor has the option to purchase the Vehicle on the Scheduled Maturity Date for $16,988.00,[1] which the Lease

---

[1] According to the Lease, there might be some incidental costs, such as official fees and taxes, in addition to the purchase price of $16,988.00 that the Debtor would be obligated to pay to purchase the Vehicle on the Scheduled Maturity Date. *See Lease ¶ 34.*
(continued...)

2

represents will be the "value of the Vehicle at the end of the Lease." *Id. at ¶ 9(d) & 11.* The Lease also provides the Debtor with the option, so long as he is not in default, to purchase the Vehicle during the term of the Lease but, in such case, there would be a calculation applied to determine the purchase price of the Vehicle. *See id. at ¶¶ 33-34.* The calculation would include a determination of the "Adjusted Lease Balance" as that term is defined in the Lease *Id.*

### Lease Terms Addressing Assignment and Servicing of Lease

As noted above, the lessor on the Lease was Faulkner Toyota. However, the Lease specifically provides that, upon execution, Faulker Toyota would assign the Lease to Toyota Lease Trust. For example, under the section labeled "Lease Signatures and Notices," the Lease states:

> The Lessor hereby accepts this Lease and **assigns to the Toyota Lease Trust** all rights, title and interest in the Lease and in the Vehicle, and Lessor's rights under any guaranty executed in connection with this Lease, with full powers to the Toyota Lease Trust to collect and discharge all obligations related to this Lease, any guaranty, and this assignment.

*Id.* In paragraph 38, the Lease further states:

> 38.  Assignment. We can assign our interest in this Lease and in the Vehicle without your consent. **After you sign this Lease, we will assign it to TLT and you agree to make all payments to TLT.**

*Id. ¶ 38.* Moreover, in the section of the Lease entitled "Parties," the Lease declares:

> This is a Lease for the Vehicle described below. The words "you," "your" and "yours" refer to the Lessee and any Co-

---

[1](...continued)
Also, if the Debtor failed to pay any of the monthly payments due under the Lease, those payments would also be added to the purchase price of the Vehicle. *See id.*

3

> Lessee. **The words "we," "us" and "our" refer to the Lessor, and after assignment, the Toyota Lease Trust ("TLT") and any subsequent assignee. Toyota Motor Credit Corporation ("TMCC") will be servicing this Lease on behalf of TLT.**

*Id.* ¶ 1.

*Ownership of the Vehicle*[2]

In the section of the Lease labeled "Lease Signatures and Notices," the Debtor acknowledged that he has "no ownership interest in the Vehicle" unless and until he exercises the "option to purchase set forth in this Lease." *Id.* Furthermore, Debtor admitted in his answer to the Motion that the Certificate of Title for the Vehicle lists the registered owner thereof as Toyota Lease Trust. *See Motion ¶ 9 & Answer ¶ 9.*

*Bankruptcy and Default*
*Under the Lease*

On or about January 14, 2011, Debtor filed for bankruptcy under Chapter 13 of the Bankruptcy Code. Prior to that date, he missed one or two payments on the Lease and the Vehicle was repossessed.[3] Debtor received a notice (the "Notice") titled "Rights of Defaulting Parties - Lease," dated 01/12/11, informing him that TMCC had repossessed the Vehicle, that he had no right to reinstate the Lease,[4] but that he could

---

[2] The Debtor does not contend that he owns the Vehicle but, for purposes of clarity, this point is being included in the Court's Opinion.

[3] At the hearing, Debtor's counsel acknowledged these facts and stated that there was no dispute regarding them. *See Transcript, dated March 30, 2011 ("Tr"), at 3, 7.*

[4] While Movants repossessed the Vehicle and provided the Debtor with the Notice stating that the Lease could not be reinstated, neither party contends that the Lease was terminated pre-petition or that the Debtor does not have the option of assuming it. Since the parties are not in dispute on the issue, the Court will treat the Lease as an unexpired
(continued...)

4

purchase the Vehicle by paying $28,549.93 to TQI Exchange, LLC ("TQI") which TMCC had engaged as a "qualified intermediary."[5] See Exhibit D-1. After the Debtor filed for bankruptcy, the Vehicle was returned to him. See Statement of Financial Affairs ¶ 7, Docket No. 8.

### Debtor's Chapter 13 Plan

On February 1, 2011, the Debtor filed his Plan. Chapter 13 Plan, Docket No. 11. The Plan obligates the Debtor to pay $571 to the Chapter 13 Trustee for 60 months for a total of $34,260.00. Id. From the amount paid to the Trustee, Toyota Financial Services is to be paid $28,600 for the Vehicle.[6] Id. The Plan states that the Debtor is assuming the Lease and that he "elects the buy-out provision of the [L]ease and will pay off the car via the Trustee." Id. At the hearing on the Motion, the Debtor's counsel explained that the $28,600 buy-out figure for the Vehicle is based on the Notice which the Debtor received after the Vehicle was repossessed advising him that, while he had no right to reinstate the Lease, he could purchase the Vehicle for $28,549. See Hearing Transcript, dated March 30, 2011, at 3-4 & Exhibit D-1. According to the

---

[4](...continued)
lease which the Debtor has the option of assuming pursuant to § 1322(b)(7), subject to § 365.

[5] The Lease states that "TMCC has engaged TQI, Exchange, LLC ("TQI") as a qualified intermediary" and that "TMCC has assigned to TQI its rights (but not its obligations) in agreements to acquire the Vehicle." See Lease.

[6] No explanation was given by either party for the reason that Toyota Financial Services rather than Toyota Lease Trust or TMCC is the entity to whom the $28,600 is to be paid under the Plan. However, the Debtor's counsel acknowledged at the hearing that the Plan would need to be amended to refer to Toyota Lease Trust and not Toyota Financial Services. Tr. at 8.

Debtor's counsel, it is the Debtor's position that he can exercise his right to purchase the Vehicle for $28,549 by paying that amount through the Plan.[7] *Id. at 4.*

On February 18, 2011, TMCC filed a Proof of Claim listing a secured claim in the amount of $13,042.65 which includes arrears of $4,571.55. *See Claims Register, Proof of Claim No. 1*. Under the amount of its claim, TMCC included the following statement regarding its claim which specifically mentions the Lease:

> Represents remaining lease payments to be paid directly by Debtor, at maturity, 01/13/12. Debtor is liable to return vehicle and pay excess wear and use, if any, or purchase in full for residual [sic] of $16,989.00 plus applicable fees and taxes. Creditor reserves the right to amend its claim to seek a deficiency balance, if any, in the event creditor's collateral is liquidated.

*Id.*

On March 2, 2011, TMCC and Toyota Lease Trust filed their Motion and, shortly thereafter, the Debtor filed his Answer thereto. In the Answer, the Debtor admitted that the Vehicle is a depreciating asset which continues to lose value. *See Motion ¶ 17 & Answer ¶ 17*.

---

[7] The Notice was admitted into evidence at the hearing without objection by the Movants. However, after the hearing, the Movants' counsel forwarded a letter to the Court asserting that the Notice "has nothing to do with Debtor's right with respect to the bankruptcy proceeding or the [M]otion[.]" Letter, dated March 30, 2011, from Travis Gery. The letter further states that the Notice "set forth and advised Debtor of his right to redeem his vehicle after it was repossessed prior to the Bankruptcy. The vehicle has been returned to the Debtor and he is currently in possession of it." *Id.* While not explicitly stated in Mr. Gery's letter, Movants appear to be taking the position that, in the event the Debtor assumes the Lease in his bankruptcy case and desires to purchase the Vehicle rather than continuing to lease it, he must adhere to the terms set forth in the Lease for determining the purchase price of the Vehicle and cannot rely upon the purchase price stated in the Notice. While the Court would agree that such position seems logical given that the Debtor is assuming the Lease, the Movants did not specifically raise the issue at the hearing and the Debtor, therefore, did not have a reason to address it. Consequently, the Court shall refrain from resolving the issue at this time. However, Movants are permitted to raise this issue in the future should they conclude that it continues to be in dispute.

**DISCUSSION**

Movants request the Court to grant them relief from the automatic stay or require the Debtor to assume the Lease within ten days because: (1) the Debtor is in default under the Lease; (2) the Vehicle is a depreciating asset; and (3) the Plan does not validly provide for the assumption of the Lease. Debtor does not dispute that he defaulted on the Lease pre-petition or that the Vehicle is a depreciating asset which continues to lose value. However, he asserts two grounds in opposition to Movants' request. First, he argues that there was no valid assignment of the Lease. His second argument is that his Plan properly provides for the assumption and treatment of the Lease.

### I. Assignment of Lease

In his Answer, the Debtor denies that there had been an assignment of the Lease. His contention is plainly wrong.

The Lease itself specifically provides that, upon execution of the Lease, Faulkner Toyota assigns its rights, title and interest in the Lease and also in the Vehicle to Toyota Lease Trust. By signing the Lease, the Debtor agreed to this assignment. *See Lease (section labeled "Lease Signature and Notices")*. Based on the colloquy at the hearing on the Motion and the Debtor's counsel's comment, made near the close of the hearing, that the Plan would have to be amended to replace the references to Toyota Financial Services with references to Toyota Lease Trust, *see Tr. at 8,* it appears that even the Debtor now concedes, based on the provisions in the Lease, that there was a valid assignment made to Toyota Lease Trust.

## II. Treatment of Lease in Plan

Movants contend that the Debtor's Plan is improper because, while it states that the Debtor is assuming the Lease, the Plan provides for the Debtor to purchase the Vehicle by paying the purchase price through the Plan over the course of five years. By treating the Lease in this manner, the Debtor is effectively forcing Movants to finance his purchase of the Vehicle despite the fact that they never agreed, and the Lease contains no terms obligating them, to do so.

The Debtor does not dispute Movants' depiction of his Plan but contends he is permitted to pay the purchase price of the Vehicle over the five year term of his Plan. Notably, the Debtor points to no language in the Lease, no provision in the Code and no case law to support his position.

That the Lease is a true lease and not a disguised security agreement is not at issue. The Debtor has not disputed the characterization of the Lease as a true lease and, even if he had, his argument to that effect would have been rejected. Under the Lease: (1) the lessor and then the assignee retain ownership in the Vehicle unless the Debtor exercises his option to purchase it during the term of the Lease or at the Schedule Maturity Date; (2) in the event that the Debtor exercises the option to purchase the Vehicle, he must pay additional and substantial consideration for it; (3) the Debtor has the option of terminating the Lease prior to the Scheduled Maturity Date; and (4) the Debtor is not obligated to renew the Lease or become the owner of the Vehicle. These attributes of the Lease are contrary to it being a disguised security agreement. *See* 13 Pa.C.S.A. § 1203(b) (effective as of June 16, 2008); *see also In re Street, 214 B.R. 779 (Bankr. W.D. Pa. 1997)* (ruling that rental-purchase agreement for

household items was a true lease and, as such, did not create a security interest); *In re Murray*, 191 B.R. 309 (Bankr. E.D. Pa. 1996) (concluding that vehicle lease was a true lease and not an installment purchase agreement with a security interest), *aff'd*, 201 B.R. 381 (E.D. Pa. 1996).

Because the Lease is a true lease, it must be treated as so in the Debtor's Plan. Pursuant to 11 U.S.C. § 1322(b)(7), a debtor may provide for the assumption of an unexpired lease in his or her Chapter 13 plan. However, the debtor may only do so "subject" to 11 U.S.C. § 365. *See 1322(b)(7)*. Consequently, the Debtor has the option of assuming the Lease in his Plan but, in opting to do so, he obligates himself to satisfy the requirements of § 365 which he has not done. There is no provision in his Plan for curing his default or providing adequate assurance of his future performance under the Lease. *See 11 U.S.C. § 365(b)*.

Furthermore, while the Bankruptcy Code permits a Chapter 13 debtor to modify the rights of certain holders of secured claims, since the Movants are parties to an unexpired lease and not a security agreement, the Debtor is not entitled to modify the terms of the Lease and force Movants to finance his purchase of the Vehicle. *In re Calloway*, 2010 WL 5597723 (Bankr. M.D. N.C. Oct. 28, 2010) (holding that since motor vehicle contract between the debtor and Fifth Third Bank was a lease and not a security agreement, the debtor was required to treat Fifth Third Bank's claim in his Chapter 13 Plan as a lease and not as a secured debt which meant that the debtor could not obligate Fifth Third Bank to finance the purchase of his vehicle); *In re Pittman*, 289 B.R. 448, 450 (Bankr. M.D. Fla. 2003) (ruling that § 1322(b)(2) precluded the debtor from modifying the rights of her motor vehicle lessor, including its right to be paid a lump sum

payment for the vehicle's purchase price upon the debtor's exercise of the purchase option under their motor vehicle lease); *In re Winston, 181 B.R. 589, 594 (Bankr. N..D. Ala. 1995)* (holding that the debtor could not treat a lessor as a secured creditor by paying the present value of the purchase option price of the lease through her Chapter 13 plan); *In re Weske, 203 B.R. 694 (Bankr. E.D. Wis. 1996)* (rejecting argument that Chapter 13 debtor could "finance the residual purchase price of a vehicle lease over the life" of his or her plan). Rather, if the Debtor wants to assume the Lease and exercise his option to purchase the Vehicle, he must do so assuming the Lease in accordance with the requirements of § 365 and paying the purchase price for the Vehicle in a lump sum. As currently written, the Debtor's' Chapter 13 Plan modifies the terms between the parties by forcing Movants to finance the Debtor's purchase of the Vehicle. Consequently, the Lease is not validly assumed in the Plan.

### III. Movants' Request for Relief

Movants request the Court to issue an Order: (I) requiring the Debtor to "expressly and properly" assume the Lease within ten days and cure any and all defaults at that time; (ii) requiring the Debtor to surrender the Vehicle if the Lease is rejected or deemed rejected; and (iii) granting them (the Movants) relief from the automatic stay if the Lease is rejected or deemed rejected. Section 365(d)(2) of the Code provides that upon the request of any party to a lease, the Court may set a specified period of time for determining whether to assume or reject a lease. *See 11 U.S.C. § 3625d)(2)*.[8] Since the Vehicle is a depreciating asset which is losing value and

---

[8] Notably, § 365(d)(2) states, in pertinent part, that "the court, on the request of any party to such ... lease, may order the <u>trustee</u> to determine within a specified period of time whether to assume or reject such ... lease." *11 U.S.C. § 362(d)(2)(underlining added)*. The
(continued...)

the Debtor's bankruptcy case was filed nearly four months ago, the Court agrees that, in this situation, it seems reasonable to set a specified period of time for assumption or rejection of the Lease. The Debtors shall be given fifteen (15) days to amend their Plan to assume the Lease in accordance with § 365 and to file an appropriate motion for permission to assume. In accordance with § 365, the Debtor must: (i) cure, or provide adequate assurance that he will promptly cure, his monetary default under the Lease; and (ii) provide "adequate assurance of future performance" under the Lease. 11 U.S.C. § 365(b).

Insofar as the additional relief which Movants request in the Motion (*i.e.*, that the Debtor be required to surrender the Vehicle and/or that Movants be granted relief from the stay), the Court shall postpone disposing of that part of the Motion pending a further hearing on the same. The hearing shall be scheduled for a date shortly after the aforementioned fifteen (15) day period has expired, at which time the Debtor's compliance with the terms of the Court's Order shall be ascertained.

---

[8](...continued)
issue of whether this subsection of 365(d)(2) applies only to the trustee is not addressed herein because the debtor did raise the argument as grounds for opposing the Motion. Compare *In re Warne*, 2011 WL 1303425, at *7 (Bankr. D. Kan. April 4, 2011) (applying § 365(d)(2) to Chapter 13 debtor) with *In re Hendrickson*, 2005 WL 3670876, at *3 n.6 (Bankr. N.D. Tex. May 24, 2005) (observing that non-debtor party cannot utilize § 365(d)(2) "against a Chapter 13 debtor, but against the chapter 13 trustee only."). Regarding this issue, Collier on Bankruptcy states:

> If the other party to the contract seeks an earlier determination of whether the trustee or debtor in possession will assume or reject the contract, the settled rule, which was borrowed from equity receivership practice, is that the trustee or debtor in possession has a reasonable time within which to decide. "Reasonableness" depends upon the facts and circumstances of the particular case.

3 Collier on Bankruptcy ¶ 365.05[2][a], at 365-43 (16th ed. rev. 2010).

11

**SUMMARY**

The Debtor's purported assumption of the Lease in his Chapter 13 Plan is invalid because he has failed to comply with the requirements for assuming a lease as set forth in § 365.  Pursuant to Movants' request under §365(d)(2), the Court shall order the Debtor to amend his Plan within fifteen (15) days to assume the Lease and file an appropriate motion for permission to assume the Lease. If he assumes the Lease, he must do so in compliance with the requirements of §365(b) as discussed above.  If the Debtor fails to comply with the terms of the Court's Order, the Lease shall be deemed rejected and the Movants' request for relief from the automatic stay will be granted.  A further hearing on the Motion shall be scheduled for a date certain shortly after the expiration of the aforementioned fifteen (15) day period.

An appropriate order follows.

By the Court:

_____
Stephen Raslavich
Chief, United States Bankruptcy Judge

Dated: May 11, 2011